FRANKLIN TOWNSHIP et al., Appellees,

v.

MEADOWS et al., Appellants.

[Cite as *Franklin Twp. v. Meadows* (1998), 130 Ohio App.3d 704.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 18751 and 18683.

Decided Dec. 16, 1998.

**706**

*Paul F. Adamson,* for appellees.

*Jeffrey N. James* and *Nicholas Swyrydenko,* for appellants.

DICKINSON, Judge.

Defendants Jerry and Velvet Meadows have appealed from a judgment of the Summit County Common Pleas Court that granted declaratory and injunctive relief to plaintiffs Franklin Township and the township's zoning inspector, Mark Kochheiser. Defendants have argued that (1) the trial court incorrectly found their business not to be a public utility and, therefore, not exempt from township zoning regulations pursuant to R.C. 519.211(A), (2) the trial court incorrectly failed to apply the doctrine of estoppel against the township, and (3) the trial court incorrectly found Velvet Meadows to be in contempt of court and incorrectly awarded attorney fees to the township as punishment for defendants' actions.

This court affirms the judgment of the trial court because (1) defendants failed to demonstrate that their company was a public utility pursuant to R.C. 519.211(A), (2) defendants failed to show that estoppel was applicable in this case, and (3) the trial court did not err by finding Velvet Meadows to be in contempt of court and by awarding attorney fees as part of the township's costs.

I

Defendants are the sole shareholders of Industrial Machinery Transport Incorporated, an Ohio corporation engaged in the intrastate and interstate hauling of industrial machinery. During September 1996, defendants requested an opinion from Franklin Township's zoning inspector concerning the possibility of relocating their business to the township. Specifically, they asked whether, pursuant to R.C. 519.211(A), they would be exempt from township zoning restrictions as a public utility. The zoning inspector requested an opinion from the Summit County Prosecutor's Office. That office stated that defendants' company was likely exempt as a public utility. On February 12, 1997, the zoning inspector sent a letter to defendants stating that their business would be exempt from the township's zoning regulations. Defendants continued with their plans to move and operate their trucking company from the new location in Franklin Township.

A new zoning inspector for Franklin Township took office on February 15, 1997. He received complaints from defendants' neighbors about the operations being conducted on defendants' property. He reviewed the prior zoning inspector's letter to defendants and disagreed with its contents. He also inspected defendants' property and concluded that they were in violation of the township's zoning regulations. He therefore posted a notice on defendants' property on April 9, 1997, in which he informed them that they were in violation of the township's zoning regulations. He sent a letter on April 21, 1997, explaining to defendants that before any commercial or industrial buildings could be constructed, they would need to have their plans approved by the Summit County Engineer's Office and to obtain a zoning permit. Another letter was sent by the township's attorney on April 22, 1997, informing defendants that the township did not consider their business to be exempt from township zoning regulations. On May 22, 1997, Franklin Township filed a complaint against defendants in which it sought a declaration that defendants were in violation of the township's zoning regulations. It also sought a permanent injunction to prevent defendants from operating their business from their land in Franklin Township.

Defendants, even after receiving notice from the township that they were in violation of the zoning regulations, continued to implement their plan to operate the trucking terminal from their property. A witness testified during the preliminary injunction hearing that "hundreds of tons of limestone" had been

brought in during April and May 1997. Also during May 1997, gravel was brought in and a driveway was constructed. Truck traffic began on the property at least as early as April 1997. By June 3, 1997, defendants had completed moving their equipment onto the property. On that date, they started operating as a trucking terminal. They did not apply to the township for permission to operate the terminal, believing that they had a right to operate without permission.

On July 8, 1997, the trial court held a preliminary injunction hearing. On July 17, 1997, it issued a preliminary injunction, enjoining defendants from operating their trucking business on the land and prohibiting further construction at the site. Contrary to the trial court's order, however, defendants continued to operate their business, and, on August 12, 1997, the trial court found that they had violated the injunction. It found that Ms. Meadows had solicited business for the trucking firm after the injunction was issued, and it ordered her incarcerated at the Summit County Jail for thirty days, which was suspended as long as no further trucking operations were conducted on the premises. It further ordered defendants to pay the township's attorney fees and the costs of the hearing.

On September 9, 1997, the township's action was tried to the court. On September 19, 1997, the trial court ruled that defendants had failed to provide sufficient evidence that their trucking business could be classified as a public utility, pursuant to R.C. 519.211(A), and permanently enjoined them from operating their business on their property in Franklin Township. Defendants timely appealed to this court.

II

A

Defendants' first assignment of error is that the trial court incorrectly determined their business not to be a public utility. They have argued that pursuant to R.C. 519.211(A) and case law from this court, their business should have been classified as a public utility and, as such, was exempt from the township's zoning regulations. In particular, defendants have relied on *Freight, Inc. v. Northfield Ctr. Twp. Bd. of Trustees* (1958), 107 Ohio App. 288, 8 O.O.2d 212, 158 N.E.2d 537, to support this assignment of error. In *Freight, Inc.*, this court held a trucking firm to be a public utility when that firm was engaged in the intrastate and interstate hauling of commodities, was licensed by the Public Utilities Commission of Ohio and the Interstate Commerce Commission, had regulated rates, and held its services open to the public indiscriminately. Pointing to *Freight, Inc.*, defendants have argued that its holding compels a similar result in this case.

*Freight, Inc.* was an early case construing the public utility exemption from township zoning regulation pursuant to R.C. 519.211. The Ohio Supreme Court has refined that case. In *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees* (1992), 64 Ohio St.3d 385, 596 N.E.2d 423, syllabus, the court held:

"Determination of whether a particular entity is a public utility for the purpose of exemption from local zoning restrictions requires consideration of several factors related to the 'public service' and 'public concern' characteristics of a public utility. While the definition of a 'public utility' is a flexible one, the entity must provide evidence that it possesses certain attributes associated with public utilities or its claim to that status must fail."

■ Defendants, therefore, had the burden of providing sufficient evidence to demonstrate public utility status. Absent such evidence, their business was not entitled to that classification. *Id.* at 389, 596 N.E.2d at 426–427.

■ Public service is demonstrated by the "devotion of an essential good or service to the general public which has a legal right to demand or receive this good or service." *Id.* at 387, 596 N.E.2d at 425. The good or service must be provided indiscriminately and reasonably, and may not be arbitrarily or unreasonably withdrawn. *Id.* at 387–388, 596 N.E.2d at 425–426; see, also, *Adam v. Bath Twp. Bd. of Zoning Appeals* (1997), 121 Ohio App.3d 645, 649, 700 N.E.2d 669, 671; see, generally, *Freight, Inc., supra,* 107 Ohio App. at 293, 8 O.O.2d at 215, 158 N.E.2d at 540–541. Defendants introduced no evidence demonstrating that their trucking business provided an essential service to the general public, or that the public had a legal right to demand it. Their business essentially involved the hauling of industrial payloads for private and public entities. This court cannot conclude that simply operating a trucking business automatically establishes the public service element. In addition, defendants failed to demonstrate that their business was provided to the general public without discrimination, or that it could not be arbitrarily or unreasonably withdrawn. The most that defendants claimed on this point was that they offered their services to "absolutely anybody." Those claims alone, however, were not sufficient to demonstrate that their business provided a public service. See *A&B Refuse Disposers,* 64 Ohio St.3d at 389, 596 N.E.2d at 426–427 (rejecting appellant's assertion that *Marano v. Gibbs* (1989), 45 Ohio St.3d 310, 544 N.E.2d 635, stands for the proposition that any business that simply claims that its services are "open to the public" can be categorized as a public utility). Defendants failed to carry their burden of demonstrating that their business provided a public service, as defined in *A & B Refuse Disposers.*

■ Besides demonstrating the public service aspect of a public utility, defendants were required to show that their business was a matter of public concern.

The public concern of a public utility arises from the monopolistic aspects of the business and the nature of the business in which it is engaged. See *A & B Refuse Disposers, supra,* 64 Ohio St.3d at 389, 596 N.E.2d at 426–427; *Adam v. Bath Twp. Bd. of Zoning Appeals* (1997), 121 Ohio App.3d 645, 649–650, 700 N.E.2d 669, 671–672. In determining whether defendants' business involved a public concern, relevant factors include the good or service provided, competition in the local marketplace, and regulation by the government. *A & B Refuse Disposers,* 64 Ohio St.3d at 388, 596 N.E.2d at 425–426.

Defendants introduced no evidence relating to the nature of their services. They did not demonstrate anything in particular about their specific business or the trucking industry in general. In addition, they introduced no evidence whatsoever concerning the level of competition in the local marketplace. They did not address whether they held a monopolistic or oligopolistic position in the marketplace. In fact, they failed to even define the market. According to Ms. Meadows's testimony at the preliminary injunction hearing, their list of clients did not include any Franklin Township residents, arguably leading to the conclusion that their business was not a public concern, at least as to Franklin Township residents. See *A & B Refuse Disposers, supra,* 64 Ohio St.3d at 390, 596 N.E.2d at 427 (one factor leading to conclusion that the business was not a public utility was that no evidence was introduced showing that "a substantial part of those [local] residents actually avail[ed] themselves of [appellant's] service").

▮ Finally, although defendants are registered with the Public Utilities Commission of Ohio and the Federal Highway Administration, regulation alone is not dispositive of the question of whether an entity's business is a matter of public concern.[1] *Id.* at 389–390, 596 N.E.2d at 426–427. Along those same lines, although defendants' business is recognized as a public utility by the Public Utilities Commission of Ohio, for purposes of regulation by the Public Utilities Commission, that recognition alone does not establish that classification for purposes of R.C. 519.211(A). See *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1328–1329; *Springfield Twp. v. Grable* (Aug. 5, 1998), Summit App. No. 18832, unreported, at 6–7, 1998 WL 469871.

Defendants failed to introduce sufficient evidence to demonstrate that their business was a public utility, entitled to exemption from Franklin Township's zoning regulations pursuant to R.C. 519.211(A). Consequently, the trial court did

---

1. Apparently, defendants must have their rates approved by the Federal Highway Administration. In addition, they are subject to appropriation by the federal government in cases of national emergency.

not err by finding that their business was not exempt. Defendants' first assignment of error is overruled.

B

Defendants' second assignment of error is that the trial court incorrectly failed to apply the doctrine of equitable estoppel against the township. They have argued that because the then Franklin Township zoning inspector wrote on February 12, 1997, that their business was a public utility, defendants should have been entitled to rely on that representation and the township should not have been permitted to change its position and argue that defendants were in violation of the township's zoning regulations.

Equitable estoppel prevents relief when one party induces another to believe that certain facts exist and the other party changes his position in reasonable reliance on those facts. *Chubb v. Ohio Bur. of Workers' Comp.* (1998), 81 Ohio St.3d 275, 279, 690 N.E.2d 1267, 1269–1270. Defendants, as the parties raising this affirmative defense, had the burden of demonstrating its applicability. See Civ.R. 8(C); *MatchMaker Internatl., Inc. v. Long* (1995), 100 Ohio App.3d 406, 408, 654 N.E.2d 161, 162. Determinations concerning the specific elements of estoppel are questions of fact. *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.* (C.A.6, 1984), 749 F.2d 315, 319. Whether facts proven are legally sufficient to constitute an estoppel is a question of law. *Id.*

In this case, defendants failed to set forth sufficient facts to demonstrate the applicability of equitable estoppel. First, defendants could assert estoppel against the township only if the prior zoning inspector made a statement that was within his authority to make and that statement actually induced reliance. See *Pilot Oil Corp. v. Ohio Dept. of Transp.* (1995), 102 Ohio App.3d 278, 283, 656 N.E.2d 1379, 1382–1383 (applying estoppel against municipality); *Shapely, Inc. v. Norwood Earnings Tax Bd. of Appeals* (1984), 20 Ohio App.3d 164, 166, 20 OBR 198, 200–201, 485 N.E.2d 273, 275–276. To demonstrate the applicability of equitable estoppel in this case, therefore, defendants were required to show that it was within the scope of the zoning inspector's authority to grant exemptions from the township's zoning regulations.

Defendants presented no evidence regarding the scope of the zoning inspector's authority. They only showed, through the testimony of the zoning inspector, that he had given a copy of the letter at issue to the chairperson of the trustees of Franklin Township. That testimony alone was not sufficient. Defendants did not present any township resolutions or zoning regulations that defined the authority of the zoning inspector. Defendants did not show what person or entity, if any, may exempt a business from the township's zoning regulations as a

public utility, or what procedures were necessary to resolve such a case. Accordingly, because defendants presented no evidence showing that the zoning inspector was acting within the scope of his authority when he informed them that their business was exempt from the township zoning regulations, defendants have failed to demonstrate the applicability of equitable estoppel to this case.

Second, the February 12, 1997, letter did not necessarily induce defendants to rely to their detriment. Defendants were preparing to move, and were making all of the necessary arrangements to move, well before they were told that their business was exempt from the township's zoning regulations. According to Ms. Meadows, during October 1996, defendants sent the Public Utilities Commission of Ohio a notice of their new address in Franklin Township because they were required to inform the commission of their "home domicile." Defendants failed to demonstrate that they were waiting for confirmation from the zoning inspector before they moved or that they would not have moved had the zoning inspector not determined their business to be exempt from the township's zoning regulations. Instead, they continued with their plans to move while the decision of the zoning inspector was pending. Defendants have, therefore, failed to show that they were induced to move to Franklin Township by the zoning inspector.

Finally, defendants' reliance on the February 12, 1997, letter was not reasonable, considering that that letter's conclusions were revoked when the new zoning inspector informed them that they were in violation of the township's zoning code. The township notified defendants of its position that their trucking company was not a public utility as early as April 9, 1997, when the new zoning inspector posted a notice of violation at their premises, and no later than May 22, 1997, when the township filed its complaint against them. Despite that notice, defendants continued with their plans to move their business into the township and to begin trucking operations. Defendants did not actually begin operations at their facility until the first week of June 1997. According to Ms. Meadows's testimony, after receiving notice that the township considered them in violation of its zoning code, defendants did not stop with their plans to move their operations on the advice of their attorney. At that time, they knew the township's position and understood that the township would consider any further actions on their part to be in violation of the township's zoning regulations. They were, therefore, not operating in reliance on the February 12, 1997, letter. Defendants' second assignment of error is overruled.

## C

Defendants' third assignment of error is that the trial court incorrectly found Ms. Meadows in contempt of court and incorrectly awarded attorney fees to the township. They have argued that the trial court's granting of the

preliminary injunction was improper and that, therefore, finding Ms. Meadows in contempt for violating that injunction was improper. Defendants have simply concluded that the trial court's granting of the preliminary and permanent injunctions was improper without demonstrating how the trial court's action was improper or why the injunctions should not have been issued.[2] Defendants' argument, therefore, is overruled. Nonetheless, even if Ms. Meadows had shown that the injunction was improperly granted, she still would have been obligated to obey it. See *Cramer v. Petrie* (1994), 70 Ohio St.3d 131, 133, 637 N.E.2d 882, 884–885 (courts have a "strong interest" to see that their orders are not "disobeyed with impunity"); *Hamilton City School Dist. Bd. of Edn. v. Hamilton Classroom Teachers Assn.* (1982), 5 Ohio App.3d 51, 53, 5 OBR 146, 149, 449 N.E.2d 26, 29 ("[a]n order issued by a court with jurisdiction must be obeyed until it is reversed by orderly and proper proceedings"); *In re White* (1978), 60 Ohio App.2d 62, 64–69, 14 O.O.3d 34, 35–39, 395 N.E.2d 499, 501–504.

Finally, defendants have argued that the trial court improperly awarded attorney fees to the township. They have argued that pursuant to R.C. 2705.05, the allowable sanctions for contempt for a first-time offense are only a fine of no more than $250, imprisonment up to thirty days, or both. Although R.C. 2705.05 sets forth penalties for contempt of court, a court is not limited to imposition of those penalties. *McDaniel v. McDaniel* (1991), 74 Ohio App.3d 577, 579, 599 N.E.2d 758, 759–760. Among other things, it may award attorney fees as part of the costs taxable to a defendant found to have committed civil contempt. *Id.* The trial court ordered defendants to pay the township's attorney fees and the costs of the hearing, and ordered Ms. Meadows to serve a term of thirty days in the Summit County Jail. This court concludes that the award of attorney fees was part of the costs of the hearing. Defendants' third assignment of error is overruled.

### III

Defendants' assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SLABY, P.J., and REECE, J., concur.

---

**2.** Ms. Meadows was only found in contempt for violating the preliminary injunction, not both injunctions, as defendants have asserted.